IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDALL MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:11-cv-2664-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randall Mitchell seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed and remanded.

### Background

Plaintiff alleges that he is disabled as a result of his seizure disorder. After his application for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on June 26, 2009. At the time of the hearing, Plaintiff was 40 years old. He is a high school graduate and has an associate's degree and past work experience as a stock clerk and as an unarmed security guard. In his initial application, Plaintiff stated he had not engaged in substantial gainful activity since February 1, 2008, but, at the hearing, Plaintiff's counsel verbally amended his onset date to August 30, 2007.

Three people testified at the ALJ hearing: Plaintiff; Plaintiff's mother, Carolyn Gilbert; and the vocational expert ("VE"), Carol Kutala. Plaintiff's mother testified in order to provide additional testimony where Plaintiff's memory failed him.

Plaintiff testified that he lives with his mother and step-father. *See* Administrative Record [Dkt. No. 10] at 36-37. Plaintiff worked as a stock clerk at Target, but that employment ended because he could no longer do the work due to his medical condition and inability to transport himself to work. *See id.* at 38-39. Before his work at Target, Plaintiff worked as an unarmed security guard at the Dallas Museum of Art ("DMA"). *See id.* at 39. Plaintiff testified that he can no longer work because he is a danger to himself – his seizures are unpredictable, and, when he has them, he can fall and hurt himself. *See id.* at 42-43. Plaintiff testified that he has "small" seizures almost once a week and "big" seizures every other month. *Id.* at 42-44. Plaintiff further testified that he takes medicine for his seizures. He explained that he tries to use systems – such as separating his medicines and keeping the pills in pill boxes – but that he forgets to take his medication sometimes. *See id.* at 46-47. Even though Plaintiff has someone at home with him, he testified that he tries to be independent and does not rely on his mother or step-father to help him remember to take his medicines. *See id.* at 48-49. Plaintiff stated that, on the days he has seizures, he is not capable of working and provided a list of some of the more serious injuries that he has suffered as a result of seizures, including dislocating a jaw, breaking his nose, and biting off the tip of his tongue. *See id.* at 50.

Ms. Gilbert, Plaintiff's mother, testified that Plaintiff actually has the "small" seizures two to three times per week. *Id.* at 57-58. His mother also testified that she

tries to help Plaintiff remember to take his medicines and proposes different systems, such as pillboxes, but that Plaintiff tries to do it himself and will forget to take them. *See id.* at 58-59.

Finally, Ms. Kutala testified that a hypothetical individual with the claimant's age, education, and work history could perform Plaintiff's past relevant work as a security guard. *See id.* at 63. She further testified that the individual could go off task for one to five minutes per hour and could miss one to two days of work per month but that three days or more would lead to job retention issues. *See id.*

Plaintiff's counsel noted at the hearing that Plaintiff's treating neurologist – Dr. Paul Van Ness – indicated that Plaintiff has severe memory issues and therefore does not always take his medicine. Plaintiff's counsel acknowledged that there are no notations in any medical records indicating that Plaintiff did not take his medication properly due to memory problems. *See id.* at 29-30. The ALJ said that she would consider a note from Dr. Van Ness providing the information but would not order a neuropsychological consultative exam. *See id.* Plaintiff submitted a letter from Dr. Van Ness after the hearing, wherein Dr. Van Ness explained that Plaintiff "experiences severe memory issues and despite his best efforts, is not always correct with his medication." *Id.* at 286. Dr. Van Ness further explained that, "due to increasing memory issues," Plaintiff needs assistance and daily reminders to take his medication correctly. *Id.* Dr. Van Ness also stated that Plaintiff is unable to work "due to the frequency of his seizure activity." *Id.* Dr. Van Ness responded to interrogatories and stated that Plaintiff is reasonably likely to miss an average of more than three days of

work per month and that such a statement has been true for at least the preceding 12 months. *See id.* at 297.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from a severe impairment – seizure disorder, or Lennox-Gastaut syndrome ("LGS") – the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. *See id.* at 16. The ALJ determined that Plaintiff's medical impairments could cause the symptoms that Plaintiff complains of but concluded that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." *Id.* at 18.

The ALJ's residual functional capacity ("RFC") assessment was as follows: "[T]he claimant has the residual functional capacity to sustain competitive work at all exertional levels but with the following nonexertional limitations. The claimant would be unable to work at unprotected heights, work with dangerous moving machinery, operate a motor vehicle, and work with open flames or dangerous chemicals." *Id.* at 17. The ALJ stated that her conclusion was based on the lack of medical records indicating constant seizure activity as well as medical records that, the ALJ states, indicate that "with medication the claimant could meet the demands of competitive work with the restrictions set forth" in the RFC. *Id.* at 18, 19. The ALJ reviewed the June 2009 report prepared by Dr. Van Ness, wherein Dr. Van Ness bases his opinion that Plaintiff is permanently disabled on Plaintiff's inability to take medication as prescribed due to

memory loss. *See id.* at 19. The ALJ concluded, however, that Dr. Van Ness's opinion is "inconsistent with the evidence of record, evidence that ... shows extended periods of stability with medication compliance and no significant side effects." *Id.* As a result, the ALJ gave Dr. Van Ness's opinion "no significant weight ..., other than his opinion that the claimant experiences some problems with dizziness, an allegation substantiated by the treatment records." *Id.* Based on the evidence, the ALJ concluded that Plaintiff had the residual functional capacity to perform his past relevant work as an unarmed security guard. *See id.* at 19.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. In multiple grounds, Plaintiff argues that the ALJ committed reversible error by (1) improperly rejecting Plaintiff's treating neurologist's opinion; (2) circumventing the appropriate legal standard of Social Security Regulation ("SSR") 82-59 when considering Plaintiff's medication compliance; (3) failing to comply with the procedural requirements of SSR 82-59; and (4) failing to support her RFC determination with substantial evidence. Plaintiff also argues that the Appeals Council failed to consider new and material evidence of his disability, when the evidence rendered the RFC determination unsupported by substantial evidence.

The Court determines that the hearing decision must be reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.      The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.      The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.      If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.      If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. See Audler, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is

conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

1. <u>Did the ALJ Improperly Reject the Opinion of Plaintiff's Treating Physician?</u>

Plaintiff argues that the ALJ improperly rejected Dr. Van Ness's medical opinion by affording his opinion no weight and doing so without properly weighing the opinion under 20 C.F.R. § 404.1527(d) and without providing good cause for rejecting Dr. Van Ness's opinion. *See* Dkt. No. 16 at 32. Defendant responds that the ALJ was not required to perform an analysis of Section 404.1527(d) factors under the circumstances and that, even if she was required to do so, she complied. *See* Dkt. No. 17 at 13-14.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c); *see also Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even though the treating source opinion is generally entitled to controlling weight, the opinion may be given little or no weight when good cause is shown. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

In determining whether a treating physician's opinion is not entitled to "controlling weight," the ALJ must provide good reason for his decision and must consider the following factors: (1) the physician's length of treatment of the Plaintiff;

(2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.*; 20 C.F.R. § 404.1527(c).

The Fifth Circuit has concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456. In decisions construing *Newton*, the Fifth Circuit has explained that "the *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Thus, a detailed analysis of these factors must be performed in those instances where there is no reliable medical evidence from a <u>treating</u> or <u>examining</u> physician that controverts a treating specialist. *See Benton v. Astrue*, No. 3:12-cv-874-D, 2012 WL 5451819, at *4-*5 (N.D. Tex. Nov. 8, 2012). In those instances where the ALJ does not entirely reject the treating physician's opinion but rather only gives it less weight, it is not necessary for the ALJ to perform the Section 404.1527(d) analysis. *See Jones v. Astrue*, 821 F. Supp. 2d 842, 852 (N.D. Tex. 2011) ("Accordingly, the ALJ did not entirely reject Dr. Garrison's opinion, but properly gave it less weight, and therefore did not need to perform the six-step analysis discussed in *Newton*.").

The ALJ did not reject Dr. Van Ness's opinion in its entirety or give it no weight. Rather, the opinion was given no significant weight aside from the dizziness problems, which were corroborated by the medical records. *See* Administrative Record [Dkt. No.

10] at 19. Therefore, the ALJ was not required to undergo a detailed analysis of the six factors set forth in 20 C.F.R. section 404.1527(d). *See Jones*, 821 F. Supp. 2d at 852.

Moreover, the ALJ provided good cause for not affording Dr. Van Ness's opinion great or controlling weight – she provided a detailed list of statements from the medical records that indicate that Dr. Van Ness's conclusions were "unsupported by the evidence." *See id.; see also Warren v. Astrue*, No. 4:10-cv-098-A, 2011 WL 4526092, at *7 (N.D. Tex. Sept. 29, 2011).

Even if the ALJ was required to analyze the Section 404.1527(d) factors, the Court is not persuaded by Plaintiff's argument that the ALJ failed to properly do so. In her decision, the ALJ stated that she considered opinion evidence in accordance with Section 404.1527's requirements and also provided detailed reasons for affording Dr. Van Ness's opinion no significant weight. *See* Administrative Record [Dkt. No. 10] at 17. More specifically, the ALJ pointed out several inconsistencies between the record as a whole and Dr. Van Ness's opinion as well as the lack of support for Dr. Van Ness's findings – namely the fact that Plaintiff's memory loss is not sufficiently documented in the medical records. *See id.* at 19. The ALJ cited to the applicable regulations and demonstrated that the relevant factors had been considered. *See id.* at 18-19. Such an analysis is sufficient to make a determination that a treating physician's opinion be given no weight. *See Brock v. Astrue*, No. 3:10-cv-1399-BD, 2011 WL 4348305, at *4 (N.D. Tex. Sept. 16, 2011) ("The regulations require only that the Commissioner 'apply' the section 1527(d)(2) factors and articulate good reasons for the weight assigned to a treating source opinion. The ALJ need not recite each factor as a litany in every case." (citations omitted)).

Because the Court finds that the ALJ did not err in her decision to give Dr. Van Ness's opinion no significant weight, this alleged ground for error is denied.

> 2.   Did the ALJ fail to comply with Social Security Regulations regarding compliance with medical advice?

Plaintiff contends that the ALJ erred by failing to follow the procedural and substantive guidelines laid out in SSR 82-59 as well as 20 C.F.R. §§ 404.1530 and 416.930.

First, Plaintiff argues that the ALJ erred by failing to follow the analysis required by SSR 82-59 in making a noncompliance decision. *See* Dkt. No. 16 at 20-21. Specifically, Plaintiff argues that the ALJ could only make a finding that Plaintiff failed to follow prescribed treatment where all of the following conditions exist: (1) the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity;(2) the impairment has lasted or is expected to last for 12 continuous months from the disability's onset or is expected to result in death; (3) treatment that is clearly expected to restore capacity to engage in any SGA has been prescribed by a treating source; and (4) the evidence of record discloses that there has been refusal to follow prescribed treatment. *See id.* (citing SSR 82-59).

According to Plaintiff, not all of the required findings were made. Plaintiff also argues that, before the ALJ could make a finding of noncompliance, she was required to comply with certain procedural safeguards delineated in SSR 82-59 and that she failed to do so. *See* Dkt. No. 16 at 25-28.

Defendant argues that SSR 82-59 does not apply in the instant case because it only applies in cases in which the Commissioner is denying benefits to an otherwise

disabled individual on the basis that the claimant has failed to follow their prescribed treatment. *See* Dkt. No. 17 at 8. Defendant contends that the ALJ only considered Plaintiff's noncompliance as part of her analysis of Plaintiff's credibility in making the disability determination. *See id.* at 8-9 & 12. Therefore, under Defendant's logic, the ALJ was not required to comply with SSR 82-59, substantively or procedurally.

In some cases, a finding of noncompliance with treatment will preclude a finding of disability. *See* 20 C.F.R. § 404.1530; SSR 82-59. Before making a finding of noncompliance, the ALJ is required to follow various requirements. *See* 20 C.F.R. §§ 404.1535, 416.930; SSR 82-59. But an ALJ is entitled to consider noncompliance when making a determination as to disability, without an analysis of these factors, if the noncompliance is being considered only as part of the credibility determination. *See Robinson v. Astrue*, No. H-09-2497, 2010 WL 2606325, at *8 (S.D. Tex. June 28, 2010) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility.")). But where "the ALJ relied almost exclusively on ... noncompliance with prescribed treatment to determine Plaintiff's RFC, which provide[s] the basis for the decision that Plaintiff was not disabled," the ALJ should comply with the requirements found in SSR 82-59. *See Lindsey v. Astrue*, No. 3:09-cv-1649-BF, 2011 WL 817173, at *8 (N.D. Tex. Mar. 9, 2011).

Defendant claims that the "ALJ analyzed the evidence of Mitchell's noncompliance [only] within the context of her analysis of Mitchell's credibility." Dtk. No. 17 at 8 (citations omitted). But, throughout the decision, the ALJ demonstrates her reliance on noncompliance in making the disability determination, stating that:

- the evidence does not indicate frequent seizure activity after 2001, except during periods of noncompliance, *see* Administrative Record [Dkt. No. 10] at 18;

- the ALJ "is convinced with medication compliance the claimant was not precluded from working on August 30, 2007, his amended onset date," *id.*; and

- the ALJ is "convinced with medication the claimant could meet the demands of competitive work with the restrictions" provided for in the RFC, *id.* at 19.

As such, the Court finds that the ALJ relied on noncompliance as the primary basis for finding Plaintiff was not disabled. Because the ALJ relied almost exclusively on noncompliance with prescribed treatment to determine Plaintiff's RFC, the procedural and substantive principles contained in SSR 82-59 apply. *See Lindsey*, 2011 WL 817173 at *8; *accord Ibarra v. Commissioner*, 92 F. Supp. 2d 1084, 1088 (D. Or. 2000) ("Although the ALJ did not make an express finding that claimant would otherwise be disabled, his decision as a whole leaves no doubt that he premised the denial of benefits solely on his belief that claimant's condition could be ameliorated by sobriety and a prescribed treatment regimen.").

The Court must only remand the ALJ's decision, however, if the Court finds that the ALJ's failure to apply the requirements prejudiced Plaintiff. *See Ripley*, 67 F.3d at 557 n.22. It appears that the ALJ's failure to apply the requirements did prejudice Plaintiff. Substantively, the ALJ can only make a determination that an individual failed to follow prescribed treatment after a finding that (1) the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity;(2) the impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; (3) treatment which is clearly

expected to restore capacity to engage in any SGA has been prescribed by a treating source; and (4) the evidence of record discloses that there has been refusal to follow prescribed treatment. *See* SSR 82-59.

Here, the ALJ's decision does not reflect any analysis as to the third and fourth factors. There is evidence in the record that the prescribed treatment may not restore capacity to engage in any SGA. *See* Administrative Record [Dkt. No. 10] at 276 (noting increasing dizziness with medicine compliance and noting that with lower medicine dosages a possibility for increased seizures). Moreover, as many courts have recognized, there is a distinct difference between a claimant understanding that he must take his medicine and his being medically able to do so. *See Burns v. Astrue*, No. 5:07-cv-182, 2008 WL 2191303, at *5 (N.D. Tex. May 27, 2008); *Grossweiler v. Barnhart*, No. SA-02-CA-903, 2003 WL 22454928, at *3 (W.D. Tex. Sept. 30, 2003) (reversing where the ALJ failed to make the critical distinction between a plaintiff's awareness of the need to take his medication, and noncompliance with his prescribed treatment as a medically-determinable symptom of his mental illness). While the ALJ concluded that Plaintiff made a rational choice not to take his medicine, she did not undergo a full analysis of this issue but rather merely concluded that he failed to take his medicine, that his memory loss was not sufficiently documented in the medical notes, and that, therefore, he chose not to take his medicine. *See* Administrative Record [Dkt. No. 10] at 18-19. The ALJ relied heavily on the lack of evidence in the record regarding memory issues, but "[i]t is quite understandable that the medical records would not be very concerned with the reason that Plaintiff was not taking his medicine, although the issue is quite relevant to these legal proceedings." *Brashears v. Apfel*, 73

F. Supp. 2d 648, 652 (W.D. La. 1999). And the ALJ failed to acknowledged those instances in the record supporting a claim of memory lapses. *See* Administrative Record [Dkt. No. 10] at 247 (discussing whether Plaintiff uses a pillbox); *id.* at 275 (noting Plaintiff's memory lapses).

As such, the Court finds that remand is appropriate so that the ALJ may develop the record to determine whether Plaintiff justifiably failed to undergo the treatment prescribed and if following the treatment would restore capacity to engage in any SGA. *See* SSR 82-59, 1982 WL 31384, at *2 (S.S.A. 1982). Moreover, if on remand the evidence suggests that the claimant does not have a good reason for failing to follow the prescribed treatment, Plaintiff must be informed of that fact and of its effect on the eligibility for benefits. *See id.* at *5. Plaintiff must also be afforded an opportunity to comply with the prescribed treatment or to show "justifiable cause" for failing to do so. *Id.*

### 3.   Does substantial evidence support the ALJ's RFC Finding?

While the Court finds that the ALJ did not err in affording Dr. Van Ness's opinion no significant weight, as a result, the Court is persuaded that the ALJ's RFC determination is unsupported by substantial evidence. Plaintiff argues that the ALJ, having rejected most of Dr. Van Ness's opinion as well as the opinions of the State Agency Medical Consultants ("SAMC"), lacked substantial evidence to support her RFC finding. While Defendant catalogues a litany of facts that does, in part, support the ALJ's finding, *see* Dkt. No. 17 at 15-17, the Court finds that the evidence does not support the ALJ's finding that Plaintiff will not miss three or more days of work per month. Defendant correctly notes that the ALJ must assess all of the objective and

subjective evidence and formulate the RFC from that analysis, *see id.* at 16, but as discussed more fully below, the ALJ rejected the relevant evidence on this issue and relied on her own opinion.

The ALJ concluded that no significant weight should be accorded to Dr. Van Ness's opinion, aside from the dizziness problems, which were corroborated by the medical records. *See* Administrative Record [Dkt. No. 10] at 19. The ALJ also stated that the final disability decision was "based on updated evidence that was not available for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency physician." *Id.* Thus, it is unclear on what evidence the ALJ based her conclusion that Plaintiff's disability would not make him miss three days of work per month. It is acceptable for the ALJ to make an assessment that Dr. Van Ness's conclusions should not receive significant weight and also to discount other medical sources, with the proper analysis, but the remaining record must include substantial evidence to support the ALJ's ultimate disability decision. *See Ripley*, 67 F.3d at 557*; Martinez*, 64 F.3d at 173; *Coleman v. Astrue*, No. 09-0759, 2010 WL 3257621, at *4 (W.D. La. July 21, 2010).

Having rejected Dr. Van Ness's opinion and the SAMC findings, the only remaining evidence is the testimony from the hearing and the other medical records. Plaintiff testified the he had petite mal seizures once per week. *See* Administrative Record [Dkt. No. 10] at 43. His mother testified that his seizures are actually more frequent than that, occurring two to three times a week. *See id.* at 58. Plaintiff testified that he is affected for the entire day when he has petite mal seizures and that he would not be able to work if he had a petite mal seizure. *See id.* at 49-50.

In formulating what Plaintiff's RFC would be, the ALJ proposed the following hypothetical to the VE: "I'd like for you to consider a hypothetical individual the claimant's age, education, and work history. This hypothetical individual has no exertional limitations. They cannot climb ladders, ropes, and scaffolds. Can occasionally climb ramps and stairs. They cannot work in proximity to hazards such as at unprotected heights, near hazardous moving machinery, open flames, dangerous chemicals. They cannot operate a motor vehicle. Would such an individual be able to perform either of the claimant's past job." *Id.* at 62-63. The VE responded that the hypothetical individual would be able to perform his past relevant work as a security guard. *See id.* In making that determination, though, the VE stated one to two days a month would be the limit in terms of absence from work and that three days or more would lead to problems with job retention. *See id.* at 63.

The ALJ concluded that Plaintiff would not miss more than three days per month and therefore was not disabled because he could perform his past relevant work as a security guard. *See id.* at 17-19. In reaching this conclusion, the ALJ found Plaintiff's testimony not credible, afforded no significant weight to Dr. Van Ness's opinion on the issue, and did not rely on the SAMC. *See id.* at 19. In essence, the ALJ rejected all treating and examining physician reports and subjective testimonial evidence. As a result, the ALJ had nothing on which to base her opinion that Plaintiff would not miss three days of work or more each month, substituting her own lay opinion for that of a doctor, which is a prohibited. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

The ALJ was required to point to substantial evidence to support the RFC determination. *See Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2000); *Ripley*, 67 F.3d at 557. She failed to do so. Thus, while the Court found the ALJ did not err in concluding Dr. Van Ness's opinion should not be afforded significant weight, the ALJ was not permitted to make her own medical opinions. *See Williams*, 355 F. App'x at 832.

Reversal of the decision on this ground is appropriate only if Plaintiff shows he was prejudiced by the lack of support for the ALJ's conclusion. *See Ripley*, 67 F.3d at 557. Here, the Court concludes Plaintiff was prejudiced because he would not be qualified to perform his past relevant work as a security guard if he misses three days or more of work per month. *See* Administrative Record [Dkt. No. 10] at 63; Dkt. No. 17 at 15 ("The Commissioner concedes that, if Mitchell were to have to miss three or more days of work per month, he would not be able to work."). Therefore, the ALJ's unsupported finding on this issue was harmful error and is grounds for reversal. On remand, the ALJ must fully develop this issue and, if additional evidence is necessary, request such information so that a fully supported finding may be made.

Because the Court concludes that the ALJ erred in her finding of noncompliance and that her RFC determination lacked substantial evidence to support it, it is not necessary to address Plaintiff's remaining points of error.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

DATED: August 28, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.